RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LINDA MCCORMICK,

        *Plaintiff-Appellant,*

    *v.*

ERIC A. BRAVERMAN, et al.; CITIZENS INSURANCE
COMPANY OF AMERICA, et al.,

        *Defendants-Appellees.*

No. 04-1708

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 04-70613; 04-70622—Victoria A. Roberts, District Judge.

Submitted: February 2, 2006

Decided and Filed: June 20, 2006

Before: COLE, CLAY, and GIBBONS, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Eric A. Braverman, Lincoln Park, Michigan, Margaret A. Nelson, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, David M. Findling, FINDLING LAW FIRM, Royal Oak, Michigan, for Appellees. Linda McCormick, Livonia, Michigan, pro se.

———————————

## OPINION

———————————

    CLAY, Circuit Judge. Plaintiff Linda McCormick appeals the March 17, 2004 order of the United States District Court for the Eastern District of Michigan dismissing Plaintiff's cases against Defendants Eric A. Braverman ("Braverman"), et al. and Citizens Insurance Company of America ("Citizens Insurance"), et al. for lack of subject matter jurisdiction. Plaintiff claims violations of 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, Michigan common and statutory law, and the Michigan constitution. Although Plaintiff sets forth a myriad of claims, her underlying contention is that she is the owner of certain real property, and that Defendants have acted illegally in interfering with her ownership. For the following reasons, we **AFFIRM** the district court order.

1

# I. BACKGROUND

In 1976, Mary G. McCormick ("Mary") filed a complaint of divorce against her husband Edward J. McCormick ("Edward"). On July 19, 1976, Mary and Edward entered into a reconciliation agreement. In consideration of Mary's promise to withdraw her complaint of divorce and to attempt a reconciliation for a period of one year, Edward conveyed his interest in marital real property located at Henry Ruff Road in Livonia, Michigan ("Henry Ruff Property") to Mary. On July 19, 1976, Edward conveyed his interest in the Henry Ruff Property via quitclaim deed to Mary. Plaintiff alleges that on July 19, 1976, as a result of the reconciliation agreement, Judge Colombo of the Wayne County Circuit Court dismissed the complaint of divorce with the consent of the parties.

On July 20, 1977 Mary entered into an agreement with her daughter Linda McCormick, Plaintiff in the instant case. Mary promised Plaintiff that she would repay Plaintiff for any house payments, taxes, maintenance costs, and any other payments concerning the Henry Ruff Property that Plaintiff made. The agreement secured the indebtedness by promising to pay Plaintiff for all sums provided if and when the Henry Ruff Property was sold. Plaintiff alleges that after July 1976, Plaintiff made all of the mortgage payments on the Henry Ruff Property.

On March 21, 1980, Mary conveyed the Henry Ruff Property via quitclaim deed to herself and her daughters Plaintiff, Nancy D. McCormick ("Nancy"), and Frances S. McCormick ("Frances"), in joint tenancy. On April 25, 1980, Frances conveyed her interest to the remaining joint tenants. On July 26, 1984, Nancy conveyed her interest to the remaining joint tenants. On March 19, 1986, Mary conveyed her interest via quitclaim deed to Plaintiff. Plaintiff gave nominal consideration for the conveyance. As of March 19, 1986, Plaintiff was the sole title holder of the Huff Road Property.[1]

In 1984, Mary filed a second complaint of divorce against Edward. On August 3, 1987, the circuit court entered a default judgment of divorce. *McCormick v. McCormick*, No. 193967, 1997 WL 33344872, at *1 (Mich. Ct. App. Aug. 1, 1997) (unpublished opinion). The circuit court found that the Henry Ruff Property was marital property to be divided between Mary and Edward. Mary appealed from the property provision of the divorce judgment.[2] *Id.* As a condition of the appeal, the circuit court issued an injunction which froze marital assets in certain bank accounts. *Id.*

On September 9, 1991, the Michigan court of appeals affirmed in part and reversed in part the circuit court's judgment of divorce between Mary and Edward. Specifically, the court of appeals reversed the circuit court's decision to distribute the Henry Ruff Property as marital property. The court of appeals found that the circuit court had failed to make any findings with respect to Mary's property interest, if any, in the Henry Ruff Property. The circuit court failed to even address whether the 1976 reconciliation agreement was valid. The court of appeals remanded the case to the circuit court to determine whether the 1976 reconciliation agreement and any of the subsequent transfers were valid, as there was a question of whether the transfers were part of a conspiracy to deprive Edward of his rightful marital property. The court of appeals also advised that third parties whose property rights might be affected, such as Plaintiff, "usually must be added to the action, and at a minimum, should have the opportunity to testify at trial. In most cases, third parties should also be represented by counsel." (J.A. at 38 (citation omitted).)

---

[1] The circuit court later determined that the conveyances by Frances and Nancy were fraudulent, as their signatures had been forged on the deeds. *See infra.*

[2] No party contested the validity of the divorce itself.

On October 24, 1992, before the remand had occurred, Edward died. *McCormick*, 1997 WL 33344872, at *1.

After Edward's death, Mary filed a motion to dismiss the post-appeal proceeding without notifying Edward's estate. *Id.* On March 15, 1993, Judge Gillis of the Wayne County Circuit Court dismissed the post-appeal proceeding and lifted the injunction on the marital bank accounts. Mary and Plaintiff subsequently withdrew money from those accounts.

Upon learning of the dismissal, Edward's estate moved for reinstatement of the post-appeal proceeding. On May 21, 1993, Judge Talbot of the Wayne County Circuit Court set aside the March 15, 1993 dismissal and reinstated the post-appeal proceeding, and he ordered the return of the money withdrawn from the marital bank accounts.[3] Judge Talbot also transferred the case to the Wayne County Probate Court.

On February 16, 1994, Judge Mack of the Wayne County Probate Court entered an order of divorce between Mary and Edward.[4] Judge Mack acted pursuant to the remand instructions of the September 9, 1991 order of the Michigan court of appeals. Judge Mack awarded the Henry Ruff Property to Edward's estate, on the grounds that Mary "refused to purge herself of the contempt of this Court, has willfully secreted assets of the marital estate, and has violated Orders of the Wayne County Circuit Court." (J.A. at 43.) Judge Mack did not base his decision on an analysis of the validity of the 1976 reconciliation agreement or any of the subsequent transfers.

In 1994, after the judgment of the probate court, Plaintiff filed a quiet title claim against Edward's estate with respect to the Henry Ruff Property. *McCormick v. McCormick*, No. 84-422014-DO, at 7 (Wayne County Circuit Court Jul. 13, 2004).[5] The circuit court held that Plaintiff had no ownership interest in the Henry Ruff Property. *Id.* at 8. The circuit court found that the 1976 conveyance from Edward to Mary was void because it lacked consideration and because it was against public policy. *Id.* The circuit court found that the conveyances from Frances and Nancy to the joint tenants were void because the signatures on those deeds were forged. *Id.* The circuit court also found that the March 19, 1986 transfer from Mary to Plaintiff was void because it "was an attempt to conceal the marital assets from the divorce court and a violation of the injunctive orders against the transfer of marital property." *Id.* Both the Michigan court of appeals and the Michigan Supreme Court denied Plaintiff's appeal. *Id.* at Exhibit A.

On February 21, 1997, the Michigan court of appeals vacated the May 21, 1993 order to the extent it transferred the post-appeal proceeding to the probate court. *McCormick v. McCormick*, 562 N.W.2d 504, 508 (Mich Ct. App. 1997). The court of appeals also vacated the judgment of the probate court. *Id.* The court of appeals found that Judge Talbot could properly reinstate the post-appeal proceeding, as the marriage was dissolved and the divorce was final before Edward's death. *Id.* at 507. The court of appeals, however, found that Judge Talbot improperly transferred the case to the probate court. The remand instructions from the September 9, 1991 order of the court of appeals instructed the circuit court to determine the ownership interests in the Henry Ruff Property,

---

[3] Mary refused to return the $21,000 that she and Plaintiff had removed from the accounts. *McCormick*, 1997 WL 33344872, at *1. The circuit court held Mary in contempt, and she was jailed for five months. *Id.* Although she continued to refuse to return the money, the circuit court released Mary and dismissed the contempt proceedings. *Id.*

[4] This order is somewhat unclear, as Mary and Edward were uncontestedly divorced as of August 3, 1987; only the division of property remained at issue.

[5] Plaintiff's 1994 case is *Linda McCormick v. Estate of Edward McCormick*, No. 94-403973, filed in the Wayne County Circuit Court. The Joint Appendix does not contain any record of this decision; only a subsequent circuit court case explains what occurred at that proceeding.

but instead of following this instruction, the circuit court passed the case on to the probate court. *Id.* at 507-08. The court of appeals remanded the case to the circuit court with the instructions given in the September 9, 1991 order. *Id.* at 508-09. The court of appeals offered the following guidance:

> [W]e note that [Mary's] continued refusal to answer questions about the funds she removed from bank accounts in violation of injunctive orders provides an equitable ground for granting judgment against her. Thus, the circuit court would be permitted to award [the Henry Ruff Property] to [Edward's] estate, subject to the property interest of . . . Linda McCormick . . . .

*Id.* at 509.

On remand, the circuit court found that the Henry Ruff Property was the sole property of the Edward's estate, subject to a life estate for Mary, so long as Mary obeyed certain conditions, such as insuring the property in the name of Edward's estate. *McCormick v. McCormick*, No. 84-422014-DO, at 4 (Wayne County Circuit Court Sep. 10, 1999). The Michigan court of appeals affirmed the decision. *McCormick v. Braverman*, No. 222415, 2002 WL 1065641, at *1 (Mich. Ct. App. May 24, 2002) (unpublished opinion). On March 5, 2003, the Michigan Supreme Court affirmed the court of appeals decision with respect to the Henry Ruff Property, but it vacated other portions of the decision that have no bearing on the instant case. *McCormick v. Braverman*, 657 N.W.2d 118, 118 (Mich. 2003). The supreme court then remanded the case to the circuit court to address those vacated portions. *Id.* Thus, after almost twenty years of litigation, the state courts finally agreed that Plaintiff had no property interest in the Henry Ruff Property, and that the Henry Ruff Property belonged to Edward's estate subject to a life estate for Mary.

On December 18, 2003, a fire destroyed the interior of the Henry Ruff Property. Edward's estate moved the circuit court for appointment of a receiver, as Mary had failed to insure the property in the name of Edward's estate and had thus extinguished her life estate.

On January 23, 2004, Judge Youngblood of the Wayne County Circuit Court appointed Defendant David Findling ("Findling") as the receiver for the Henry Ruff Property. Judge Youngblood also appointed Defendant Findling as the receiver for the proceeds of the insurance policy for the Henry Ruff Property, as the property had suffered damage from the fire, although the policy was under Plaintiff's name. In addition, Judge Youngblood directed Defendant Findling to make sure that all necessary repairs were made to the Henry Ruff Property.

On February 19, 2004, Plaintiff filed suit in the United States District Court for the Eastern District of Michigan. The named Defendants were Eric A. Braverman ("Braverman"), the administrator of Edward's estate; Michael E. McCormick ("McCormick"), the son of Edward and the former administrator of Edward's estate; and the justices of the Michigan Supreme Court ("Michigan Justices"). In Count I, Plaintiff alleges that Defendants Braverman and McCormick seized the Henry Ruff Property under color of state law through "fraud, fabricated information, withholding of relevant material, . . . false testimony, malicious, reckless unreasonable acts," in violation of the First, Fifth, and Fourteenth Amendment. Plaintiff seeks a declaratory judgment that she is the sole rightful owner of the Henry Ruff Property, and she seeks compensatory and punitive damages. In Count II, Plaintiff alleges that she was not made a party to the litigation that resulted in the January 23, 2004 order of receivership. Plaintiff seeks a declaratory judgment that the January 23, 2004 order of receivership is void. In Count III, Plaintiff makes the same allegations of fraud against Defendants McCormick and Braverman, but in greater detail. She alleges that Defendants McCormick and Braverman engaged in various frauds and misrepresentations from 1993 onward in order to continue litigation with respect to the divorce of Mary and Edward. Plaintiff seeks the Henry Ruff Property, as well as compensatory and punitive damages. In Count IV, Plaintiff makes the same factual allegations of fraud and misrepresentations on the part of

Defendants McCormick and Braverman in continuing litigation of the divorce of Mary and Edward, with a state common law claim of abuse of process. In Count V, Plaintiff claims that MCL § 700.1303, a statute which gives the Michigan probate court jurisdiction over certain issues, is unconstitutionally vague and over-broad. This complaint was filed as Case No. 04-70613.

On the same day, Plaintiff filed a complaint in the United States District Court against Defendant Findling and Defendant Citizens Insurance Company of America. In Count I, Plaintiff alleges that the order of receivership seizes the Henry Ruff Property in violation of the First, Fourth, Fifth, and Fourteenth Amendments. Plaintiff also alleges that the order illegally seizes the proceeds of the insurance policy on the Henry Ruff Property, because Plaintiff is the sole policy holder. In Count II, Plaintiff alleges that Defendant Findling has scheduled a search of the Henry Ruff Property, and that the search would be in violation of the Fourth Amendment. In Count III, Plaintiff alleges that the order of receivership, and Defendant Findling's resulting actions, are based on fraud and misrepresentation,[6] in violation of the Fifth and Fourteenth Amendments. This complaint was filed as Case No. 04-70622.

On March 16, 2004, the district court dismissed both of Plaintiff's complaints due to lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine. The court found that the Case No. 04-70613 complaint was an appeal of the state circuit court's order of receivership and thus impermissibly before a federal district court. The court also found that the state probate court order of February 16, 1994 extinguished Mary's interest in the Henry Ruff Property and thus Plaintiff did not have an interest in the Henry Ruff Property.[7] With respect to Case No. 04-70622, the court concluded that "the thrust of the Complaint is that [Plaintiff] is the sole title holder to [the Henry Ruff Property] and that her claim to that title cannot be attacked. The *Rooker-Feldman* doctrine precludes this Court from reviewing decisions of state courts, and as such, dismissal of [Plaintiff's complaint] is appropriate as well." (J.A. at 77.)

Plaintiff timely filed a notice of appeal.

## II.  DISCUSSION

### A.       THE *ROOKER-FELDMAN* DOCTRINE

#### 1.       Standard of Review

This Court reviews *de novo* the district court ruling that the *Rooker-Feldman* doctrine precluded subject matter jurisdiction. *Gilbert v. Ferry*, 401 F.3d 411, 416 (6th Cir. 2005) (citation omitted).

#### 2.       Analysis

The district court erred when it held that the *Rooker-Feldman* doctrine precluded jurisdiction for all counts in the Case No. 04-70613 complaint and for Count III in the Case No. 04-70622 complaint. The district court did not err in dismissing on *Rooker-Feldman* grounds Counts I and II in the Case No. 04-70622 complaint.

---

[6]Plaintiff does not allege who committed the fraud and misrepresentation.

[7]We note that the state probate court's order did not extinguish Mary's, and therefore Plaintiff's, interest in the Henry Ruff Property, as that order was subsequently vacated. Instead, it was the circuit court's decision in Plaintiff's quiet title action that found that Plaintiff had no property interest in the Henry Ruff Property.

### a.       Legal Framework

In *Rooker v. Fidelity Trust Co.*, the plaintiff filed suit in district court to have a state trial court judgment, which was affirmed by the state supreme court, declared null and void.  263 U.S. 413, 414 (1923).  The plaintiff alleged that the state court judgment violated the Contract Clause and the Fourteenth Amendment's Due Process and Equal Protection Clauses.  *Id.* at 414-15.  The district court dismissed the complaint based on a lack of subject matter jurisdiction, and the Supreme Court affirmed.  *Id.* at 415-16.  The Court found that the plaintiff's complaint was in fact requesting the district court to exercise appellate review of the state court's judgment.  *Id.*  The Court noted that the district court's jurisdiction was strictly original, and that only the Supreme Court could exercise appellate jurisdiction over state court decisions.  *Id.* at 416.

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court reiterated the holding that a district court could not exercise appellate review of a state court decision.  In that case, the plaintiff Feldman applied to the bar of the District of Columbia.  *Id.* at 465.  At the time of his application, the plaintiff was already a member of the bars of Virginia and Maryland.  *Id.*  The bar admissions committee denied the plaintiff's application, as the District of Columbia Court of Appeals, pursuant to its rulemaking authority, had previously adopted Rule 46 I(b)(3), which stated that a bar applicant could not be admitted without having graduated from an approved law school, and the plaintiff had not done so.  *Id.* at 464-65.  After this denial, the plaintiff petitioned the District of Columbia Court of Appeals to be admitted to the bar without examination or, at the least, to be allowed to sit for the bar examination.  *Id.* at 466.  The plaintiff argued that he was more than adequately qualified for admission, and he noted that the District of Columbia Court of Appeals had previously granted waivers of Rule 46 I(b)(3).  *Id.* at 467.  The court denied the plaintiff's petition.  The plaintiff Hickey had a similar experience; the plaintiff did not graduate from an approved law school and petitioned the District of Columbia Court of Appeals for a waiver of Rule 46 I(b)(3).  *Id.* at 471.  The plaintiff argued that he continued his education at his non-approved law school, as opposed to transferring to an approved school, because the state court had routinely granted waivers of the rule to graduates of a certain non-approved school.  *Id.*  The plaintiff also argued that he was more than adequately qualified for admission.  *Id.* at 471-72.  The court denied the plaintiff's petition.

The plaintiff Feldman filed suit in district court, alleging that the state court's refusal to waive Rule 46 I(b)(3) and its failure to judge the plaintiff's individual qualifications violated the Fifth Amendment and the Sherman Act.  *Id.* at 468.  The plaintiff Hickey filed an almost identical suit in federal court, alleging that the state court's decision was in violation of the Fifth Amendment and federal antitrust laws.  *Id.* at 472.  The district courts in both cases dismissed the plaintiffs' suits, on the ground that plaintiffs sought appellate review of the state court's decisions.  *Id.* at 470, 473.  The D.C. Circuit, addressing both cases in a single opinion, affirmed the dismissal of the antitrust claims on the ground that they were insubstantial, but reversed the dismissal of the constitutional claims.  *Id.* at 474.  The court opined that the state court proceedings with respect to the petitions for waiver were not judicial, so that the district courts did have jurisdiction.  *Id.* at 474-75.

The Supreme Court vacated the D.C. Circuit's judgment and remanded the case.  The Court noted that a district court was without jurisdiction to review the final determinations of a state court in judicial proceedings, *id.* at 476; the Court then found that the state court proceedings with respect to the plaintiffs' petitions for waiver were judicial, as they "involved a 'judicial inquiry' in which the court was called upon to investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist,'" *id.* at 479 (alteration in original) (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908)).  The Court therefore ruled that to the extent the plaintiffs sought review of the denial of their petitions, the district courts lacked subject matter jurisdiction.  *Id.* at 482.  On the other hand, to the extent the plaintiff challenged the constitutionality of Rule 46 I(b)(3), the district courts had subject matter jurisdiction.  *Id.* at 482-83.

Turning to the plaintiffs' complaints, the Court held that the district courts were without jurisdiction to hear the plaintiffs' claims that "the District of Columbia Court of Appeals acted arbitrarily and capriciously in denying their petitions for waiver and that the court acted unreasonably and discriminatorily in denying their petitions." *Id.* at 486. The Court reasoned that such claims were "inextricably intertwined with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny the [plaintiffs'] petitions," such that the claims called for the district courts to review the decisions of the state court. *Id.* at 486-87. The Court held, however, that the district courts did have subject matter jurisdiction over the plaintiffs' claims that Rule 46 I(b)(3) was unconstitutional.

The Court mentioned the phrase "inextricably intertwined" in one other portion of the *Feldman* opinion; in footnote 16, the Court expressed disapproval of the Fifth Circuit's analysis in *Dasher v. Supreme Court of Texas*, 658 F.2d 1045 (5th Cir. 1981). There, the Fifth Circuit held that a plaintiff, who in state proceedings had been denied the opportunity to take the Texas state bar examination, and who had not raised federal constitutional arguments in those state proceedings, could raise federal constitutional arguments in district court to attack the judgment of the state court. *Id.* at 1051. Importantly, the plaintiff in that case claimed that the state supreme court violated the Fourteenth Amendment's Equal Protection and Due Process Clauses in denying her application to take the bar examination. *Id.* at 1048. In rejecting the Fifth Circuit's analysis, the Supreme Court noted:

> If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do.

*Feldman*, 460 U.S. at 483 n.16.

After *Feldman*, the courts of appeals took varying approaches in giving content to the phrase "inextricably intertwined" in applying the *Rooker-Feldman* doctrine. While the Supreme Court used that phrase in *Feldman* to twice describe a plaintiff's complaint of harm from a state court decision itself, many circuits, including this one, gave an expansive definition to that phrase. *See Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) ("[A] federal claim is inextricably intertwined with a state court judgment and thus implicates *Rooker-Feldman* when the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." (internal quotations and citation omitted).).

Recognizing the inconsistency in application of the *Rooker-Feldman* doctrine amongst the lower courts, the Supreme Court clarified the scope of the doctrine in *Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005). There, Exxon and Saudi Basic were involved in joint ventures, and a dispute arose as to certain royalties charged by Saudi Basic. *Id.* at 1524-25. Saudi Basic filed suit in state court, seeking a declaratory judgment that the royalties were valid, and, shortly after, Exxon filed suit in federal district court, alleging that Saudi Basic had overcharged Exxon. *Id.* at 1525. Saudi Basic filed a motion to dismiss in district court, which the court denied. *Id.* Saudi Basic appealed the decision, and the Third Circuit dismissed Exxon's complaint on *Rooker-Feldman* grounds. *Id.* The court found that the district court's subject matter jurisdiction terminated when the state court entered a judgment. *Id.*

The Supreme Court reversed. The Court began its analysis with these words:

> *Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments . . . precludes a United States

district court from exercising subject-matter jurisdiction . . . . In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, *complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.* Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment.

*Id.* at 1526 (emphasis supplied). The Court noted that the concurrent jurisdiction of state and federal courts had long been recognized, and that the entry of judgment by the state court before the federal court in such a situation would not trigger *Rooker-Feldman. Id.* at 1526-27. Instead, preclusion law would govern. *Id.* at 1527. The Court also addressed the circumstance where the plaintiff initiated a federal claim after a state court decision:

Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Id.* (alteration in the original) (quoting *GASH Assoc. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

### b.          Application to This Case

The *Rooker-Feldman* doctrine does not preclude subject matter jurisdiction in this case of Counts I through V in Case No. 04-70613 and Count III in Case No. 04-70622. In these counts, Plaintiff does not complain of "injuries caused by the state court judgments," *id.* at 1521-22; she does not claim that the state court judgments, with respect to Mary's divorce and to the order of receivership, in and of themselves violate the federal Constitution or federal law, unlike the plaintiffs in *Rooker* and in *Feldman.* Instead, Plaintiff claims that certain Defendants acted illegally and that a state statute is unconstitutionally vague and overbroad. In Count I of Case No. 04-70613, Plaintiff claims that Defendants Braverman and McCormick committed fraud and misrepresentation in the divorce proceedings between Mary and Edward's estate. In Count II, Plaintiff claims that Defendants Braverman and McCormick intentionally did not make Plaintiff a party to the litigation concerning the order of receivership, so that she did not have an opportunity to assert her property right over the Henry Ruff Property. In Count III, Plaintiff repeats her claim that Defendants Braverman and McCormick committed fraud and misrepresentation in the divorce proceedings between Mary and Edward's estate. In Count IV, Plaintiff claims that Defendants Braverman and McCormick committed an abuse of process in the divorce proceedings between Mary and Edward's estate. In Count V, Plaintiff claims that MCL § 700.1303 is unconstitutionally vague and overbroad. In Count III of Case No. 04-70622, Plaintiff claims that the order of receivership was obtained through fraud and misrepresentation, though she does not specify who committed these actions.

None of these claims assert an injury caused by the state court judgments; Plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law. Instead, Plaintiff asserts *independent claims* that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means, and that a state statute is vague and overbroad. Certainly, these independent claims may deny a legal conclusion of the state court, *i.e.*, the Henry Ruff Property is the sole property of Edward's estate; however, this fact does not lead to a divestment of subject matter jurisdiction in the federal courts. Instead, the Supreme Court has instructed that preclusion law is the appropriate solution for these independent claims. It bears repeating that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one

that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 1527 (citation omitted).

This Court recently addressed similar arguments in *Todd v. Weltman, Weinberg, & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006). In that case, the defendant debt collector sought to garnish the bank account of the plaintiff debtor. *Id.* at 435. The defendant filed an affidavit in state court, required by state law, stating that it had a reasonable belief that the target assets were not exempt from garnishment. *Id.* The state court found that the affidavit was valid and froze the plaintiff's bank account. *Id.* At a subsequent hearing in state court, the plaintiff proved that the assets in the bank account were exempt, and the state court released the account. *Id.* The plaintiff then filed suit in federal court against the defendant, alleging that the defendant had lied in its affidavit in violation of the Fair Debt Collection Practices Act. *Id.* at 434. The defendant argued, among other things, that the district court did not have jurisdiction over the claim because of *Rooker-Feldman*. This Court disagreed and held that *Rooker-Feldman* did not apply: "Plaintiff here does not complain of injuries caused by this state court judgment, as the plaintiffs did in *Rooker* and *Feldman*. Instead, after the state court judgment, Plaintiff filed an independent federal claim that Plaintiff was injured by Defendant when he filed a false affidavit." *Id.* at 437. Likewise, the majority of Plaintiff's claims in this case assert injuries caused by Defendants Braverman's and McCormick's alleged wrongdoing before the state court, or by a vague and overbroad state statute; these claims do not assert injuries from the state court judgments.

The question naturally arises as how to differentiate between a claim that attacks a state court judgment, which is within the scope of the *Rooker-Feldman* doctrine, and an independent claim, over which a district court may assert jurisdiction. We find an appropriate rule of thumb in the Fourth Circuit's decision in *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712 (4th Cir. 2006). That court explained:

> The plaintiffs in *Rooker* and *Feldman* sought redress for an injury allegedly caused by the *state-court decision* itself--in *Rooker*, the plaintiff sought to overturn a state-court judgment in federal district court, and in *Feldman*, the plaintiffs sought to overturn a judgment rendered by the District of Columbia court in federal district court. In *Barefoot* [a pre-*Exxon Mobil* case], by contrast, we extended the *Rooker-Feldman* doctrine to apply in situations where the plaintiff, after losing in state court, seeks redress for an injury allegedly caused by the *defendant's actions*.

*Id.* at 717. The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim. The Second Circuit employs a similar inquiry. *See Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005) ("[F]ederal plaintiffs are not subject to the *Rooker-Feldman* bar unless they complain of an injury caused by a state judgment.). In differentiating between a barred claim and a valid claim under *Rooker-Feldman*, the Second Circuit provided two instructive examples:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* Of course, there are certain exceptions to this rule of thumb. For example, if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself. *See id.* at 88 (finding that the plaintiffs' challenge to a county board of election's refusal to tally certain absentee ballots was in fact a challenge to the state court judgment that the ballots were invalid). The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim. As explained previously, Counts I through V in Case No. 04-70613 and Count III in Case No. 04-70622 all assert injury from a source other than the state court judgments; they are therefore independent claims outside the scope of the *Rooker-Feldman* doctrine.

To the extent that Defendants argue that these claims, even though they do not assert injury from the state court judgments, are "inextricably intertwined" with those judgments so as to fall within the reach of *Rooker-Feldman*, that argument must fail. We first note that it was this exact language that was the source of the pre-*Exxon Mobil* woes as to the application of *Rooker-Feldman*. In addition, the Supreme Court used the phrase "inextricably intertwined" in *Feldman* to describe a claim where the plaintiff asserted an injury from the state court judgment itself; the claims of the plaintiffs Feldman and Hickey that the state court judgments were in violation of the Fifth Amendment were inextricably intertwined with the state court judgments, *Feldman*, 460 U.S. at 486-87; and the plaintiff's claim in *Dasher* that the state court judgment was in violation of the Fourteenth Amendment was inextricably intertwined with the state court judgment, *id.* at 483 n.16. In *Exxon*, the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase "inextricably intertwined" to extend *Rooker-Feldman* to situations were the source of the injury was not the state court judgment. In short, the phrase "inextricably intertwined" only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*. *See Davani*, 434 F.3d at 719; *Hoblock*, 422 F.3d at 86-87 ("But the phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*.").

We stress that the *Rooker-Feldman* doctrine is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap. The Supreme Court made clear in *Exxon Mobil* that the doctrine is confined to those cases exemplified by *Rooker* and *Feldman* themselves: when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law. In such a situation, the plaintiff seeks appellate review of the state court judgment, and the federal district court has no subject matter jurisdiction over such an action. Counts I through V in Case No. 04-70613 and Count III in Case No. 04-70622 do not fall within this category, so that the district court had jurisdiction over these claims.

On the other hand, in Counts I and II in Case No. 04-70622, Plaintiff alleges that the order of receivership in and of itself is illegal and causes Plaintiff harm. In Count I, Plaintiff alleges that "[s]aid order [of receivership], under color of law, seizes Plaintiff's real estate . . . in violation of

Plaintiff's United States Constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments." Under the same count, Plaintiff alleges that "[s]aid order, absent any jurisdiction, is also illegally seizing the proceed's of Plaintiff's homeowners [sic] policy, of which Plaintiff is the sole policy holder and interfering with her rights to have said premises repaired from a recent fire." Like the plaintiffs in *Rooker* and *Feldman*, Plaintiff "complain[s] of injuries caused by the state court judgment[ ] rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 125 S. Ct. at 1521-22. The count does not allege any independent claim; but rather, the count alleges that the state court order itself was illegal and harmed Plaintiff. Likewise, Count II alleges that a search authorized by the order of receivership would be illegal and would cause harm to Plaintiff. Thus, Plaintiff challenges the legality of the order itself.

The problem with applying *Rooker-Feldman* to divest jurisdiction of these two counts is that the doctrine only applies to bar a federal plaintiff's claim when she was a party in the state court action. *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994). Plaintiff was not a party to the litigation surrounding the order of receivership; the parties involved were Mary, Defendant Braverman, and Defendant Findling. The question then becomes whether the *Rooker-Feldman* doctrine should apply to a federal plaintiff in privity with a party in the state court proceeding.[8] The Second and Third Circuits have answered in the affirmative, although only the Second Circuit's decision was filed subsequent to the Supreme Court's decision in *Exxon Mobil*. *See Hoblock*, 422 F.3d at 89-90; *Marran v. Marran*, 376 F.3d 143, 151-53 (3d Cir. 2004). *See also Bates v. Jones*, 131 F.3d 843, 862 (9th Cir. 1997) (en banc) (Fletcher, J., concurring in part and dissenting in part) ("Because it is a doctrine concerning the integrity of individual judgments, *Rooker-Feldman* . . . is applicable only when the parties in a second action were also parties, or in privity with parties, in a previous state court proceeding.").

This is admittedly a close issue. In *Exxon Mobil*, the Supreme Court stated that the *Rooker-Feldman* doctrine barred federal claims of "state-court losers." 125 S. Ct. at 1521. Narrowly interpreted, this language could mean that only actual parties in the state court proceeding may be affected by the doctrine. Under a more moderate interpretation, a person in privity with the actual party who loses in state court may be deemed a state-court loser. We find that the latter interpretation is appropriate. The *Rooker-Feldman* doctrine prevents a party who loses in state court from appealing that decision to the lower federal courts, as only the Supreme Court has appellate jurisdiction over state court decisions. It would be inconsistent to disallow the party in the state suit to raise a federal claim but to allow his privy to bring the exact same claim. A state party may not circumvent the Article III jurisdictional provisions simply by substituting a privy's name for his own in the federal claim. This is especially true because the source of the injury to the state court loser and his privy would be one and the same: the state court judgment. In other words, a federal claim that alleged injury from a state court judgment would seek review of that state court judgment, regardless if the state court loser or his privy filed the federal claim. The district court may not entertain jurisdiction over a claim that calls for appellate review, no matter who raises that claim.[9]

---

[8] This Court has defined a privy as either (1) a successor in interest; (2) a nonparty who controlled the original suit; or (3) a nonparty who is adequately represented by a party in the original suit. *Becherer v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999). Plaintiff's ownership interest and her consequent interest in the litigation is wholly dependent on the conveyance of the Henry Ruff Property from Mary to Plaintiff, so she is a successor in interest. Moreover, Plaintiff's interest was adequately represented by Mary, as the two parties' interests in the Henry Ruff Property completely overlap.

[9] We note that although the general rule is that only a party to a case may seek appellate review of the judgment in that case, "it is widely recognized that in a proper case a nonparty may be sufficiently interested in a judgment to permit him or her to take an appeal from it. This requirement is satisfied by a showing of privity with a party to the case." 5 Am. Jur. 2d Appellate Review § 265. Thus, a federal claim filed by a privy of the state court loser that asserts an injury caused by the state court judgment could properly be characterized as an appeal from that judgment.

We hold that Plaintiff is in privy with Mary and is a state-court loser, so that the *Rooker-Feldman* doctrine bars jurisdiction over Counts I and II in Case No. 04-70622.

## B.      COLLATERAL ESTOPPEL

### 1.      Preservation of the Issue

This Court may affirm the decision of the district court on any grounds, including one not considered by the district court. *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 750 (6th Cir. 2003). That said, collateral estoppel is an affirmative defense which must be raised by the defendant. *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). Defendant Braverman raised the affirmative defense in this case.[10]

### 2.      Standard of Review

The district court did not address the issue of collateral estoppel, so there is no district court analysis to review on this issue.

### 3.      Analysis

Plaintiff is collaterally estopped from raising all of the remaining claims. The Michigan state courts have already determined that Plaintiff has no ownership interest in the Henry Ruff Property.

#### a.      Legal Framework

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal courts to give state court judgments the same preclusive effect that the state would afford such judgments. *Exxon Mobil*, 125 S. Ct. at 1527 (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986)). Michigan has three requirements for collateral estoppel: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845-46 (Mich. 2004) (alteration in the original) (quoting *Storey v. Meijer, Inc.*, 429 N.W.2d 169, 172 n.3 (Mich. 1988)). With respect to the third requirement, Michigan allows the defensive use of collateral estoppel against a prior plaintiff. *Id.* at 850-51.

#### b.      Application to This Case

The Michigan state courts have already determined that Plaintiff does not have an ownership interest in the Henry Ruff Property. In 1994, in Case No. 94-403973, Plaintiff filed a quiet title action against Edward's estate to establish her ownership interest in the Henry Ruff Property. The circuit court found that Plaintiff had no ownership interest in the Henry Ruff Property, because the 1976 conveyance from Edward to Mary was invalid, the conveyances from Nancy and Frances were

---

[10]We acknowledge that Defendant Braverman did not use the phrase "collateral estoppel" in his answer; however, this omission is not dispositive. Defendant Braverman asserted "That the Wayne County Circuit Court, The Michigan Court of Appeals and The Michigan Supreme Court have issued orders or opinions that have determined the title to the real estate in question," and "That your defendant, Eric A. Braverman, did not seize any property belonging to your plaintiff." (J.A. at 125.) These affirmative defenses assert that the state courts have already found that the Henry Ruff Property does not belong to Plaintiff; thus, the core of these defenses is that Plaintiff is estopped from relitigating her ownership interest in the Henry Ruff Property. The purpose in requiring a defendant to plead an affirmative defense is to give the plaintiff notice and a chance to respond. *Sushka*, 117 F.3d at 969. While Defendant Braverman's answer did not contain the phrase "collateral estoppel," his answer gave sufficient notice to Plaintiff of that defense.

invalid, and the conveyance from Mary to Plaintiff was invalid.[11] *See supra.* The state court of appeals and the supreme court denied Plaintiff's appeals. *See supra.*

Collateral estoppel applies in the instant case. With respect to the aforementioned requirements, (1) Plaintiff's ownership interest in the Henry Ruff Property was an issue that was essential to the circuit court's judgment, and the issue was litigated and determined by a valid and final judgment; (2) Plaintiff had a full and fair opportunity to litigate the issue;[12] and (3) mutuality is not required, as parties not bound by the prior judgment may use collateral estoppel defensively against the prior plaintiff.[13] *See Monat*, 677 N.W.2d at 845-46, 850-51.

A factual predicate of all of Plaintiff's remaining claims is that she has an ownership interest in the Henry Ruff Property.[14] The problem, however, is that the state courts have already decided that she has no such interest. Thus, collateral estoppel precludes all of Plaintiff's remaining claims.

---

[11] Contrary to Plaintiff's belief, the 1976 dismissal of Mary's divorce complaint against Edward does not have any preclusive effect as to the ownership of the Henry Ruff Property. With respect to collateral estoppel, the issue of ownership was not actually litigated; there was no final judgment, as the divorce complaint was dismissed through the consent of the parties; and there was no full and fair opportunity to litigate the issue, as the issue was never litigated.

With respect to *res judicata*, under Michigan law, "a second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001). The 1976 dismissal of Mary's divorce complaint has no *res judicata* effect because the case was not decided on the merits; instead, both Mary and Edward agreed to dismiss the case. Plaintiff repeatedly alleges that no appeal was taken from the 1976 decision; however, both parties agreed to dismiss the complaint, so an appeal from that decision would be most unlikely.

Likewise, the March 15, 1993 dismissal of Mary's post-appeal proceeding does not have any preclusive effect as to the ownership of the Henry Ruff Property. With respect to collateral estoppel, the issue of ownership was not actually litigated; there was no final judgment, as the divorce complaint was dismissed by Mary, the party who brought the appeal; and there was no full and fair opportunity to litigate the issue, as the issue was never litigated. With respect to *res judicata*, the 1993 dismissal was not a decision on the merits, and the issue of ownership was not resolved by the 1993 dismissal.

[12] Plaintiff never alleges any fraud, misrepresentation, or other impropriety with respect to her quiet title action. Her complaints only allege such conduct in connection with the divorce proceedings between Mary and Edward's estate and with the order of receivership. Count V of Case No. 04-70613, which alleges that MCL § 700.1303 is unconstitutional, does not specify in which proceeding the contested state statute was used; however, because Plaintiff never so much as mentions her quiet title action in either her complaint or brief, we assume that Count V addresses a proceeding other than the quiet title action.

[13] Thus, Defendants who were not parties to the prior litigation, such as the Michigan Justices, could raise collateral estoppel defensively against Plaintiff.

[14] Count I of Case No. 04-70613 alleges that Defendants Braverman and McCormick committed fraud and misrepresentation to continue the divorce proceedings and to seize the Henry Ruff Property from Plaintiff; Count II alleges that Defendants Braverman and McCormick did not make Plaintiff a party to the litigation surrounding the order of receivership, so as to seize the Henry Ruff Property from Plaintiff; Count III duplicates the allegations of Count I; Count IV alleges that Defendants McCormick and Braverman committed an abuse of process in seizing the Henry Ruff Property from Plaintiff; and Count V alleges that an unconstitutionally vague and over-broad state statute impermissibly allowed interference with Plaintiff's ownership of the Henry Ruff Property. Count III of Case No. 04-70622 alleges that Defendant Findling seized the Henry Ruff Property from Plaintiff based upon an order of receivership that was obtained by fraud and misrepresentation.

## C.     THE MICHIGAN SUPREME COURT JUSTICES

### 1.     Preservation of the Issue

This Court may affirm the decision of the district court on any grounds, including one not considered by the district court.  *Nat'l Ass'n of Letter Carriers*, 330 F.3d at 750.  Defendants Michigan Justices raised a defense under Federal Rule of Civil Procedure 12(b)(6).

### 2.     Standard of Review

The district court made no findings with respect to Defendants Michigan Justices' 12(b)(6) motion, so there is no district court analysis to review on this issue.  In analyzing a 12(b)(6) motion, this Court accepts as true all well-pleaded factual allegations, and this Court views the complaint in the light most favorable to the plaintiff.  *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 602 (6th Cir. 2005).

### 3.     Analysis

The *Rooker-Feldman* doctrine and collateral estoppel adequately dispose of Plaintiff's claims.  We address the issue of Plaintiff's purported claim against Defendants Michigan Justices to note that Plaintiff fails to state a claim against Defendants Michigan Justices.

Plaintiff mentions Defendants Michigan Justices only once in her complaint;[15] in the Parties and Jurisdiction section, Plaintiff alleges, "Defendants [Michigan Justices] was [sic] at all times relevant hereto Justice's [sic] sitting for the Michigan Supreme Court, were state actors under color of law and acted wholly without subject matter jurisdiction . . . .  Plaintiff seeks no monetary damages against these defendant's [sic]." (J.A. at 6-7).

Plaintiff does not allege any action on the part of Defendants Michigan Justices; she only alleges that they were without subject matter jurisdiction, ostensibly in the divorce proceedings between Mary and Edward.  Assuming *arguendo* that these Defendants were without jurisdiction, this fact only goes to whether these Defendants have absolute immunity when sued for their judicial acts.[16]  *See Stump*, 435 U.S. at 356-57 (explaining that the common law absolute immunity for judges may be inapplicable when a judge acts in the clear absence of all jurisdiction).  Plaintiff still needs to allege that these Defendants, while without jurisdiction, engaged in conduct that was actionable.  Plaintiff makes no such allegations, either factual or legal.  As a result, Plaintiff does not make any cognizable claim against Defendants Michigan Justices.  Moreover, Plaintiff never mentions these Defendants in the counts of her complaint; Counts I through IV specifically address Defendants Braverman and McCormick, and Count V addresses no Defendants at all.  Finally, while Plaintiff states that she does not seek monetary damages from these Defendants, she never states what relief she does in fact seek from them.  In short, Plaintiff only alleges that Defendants Michigan Justices were without jurisdiction, and while this may negate absolute immunity when these Defendants are sued for their judicial acts, it does not state a claim.

---

[15]Plaintiff only lists Defendants Michigan Justices in her complaint in Case No. 04-70613.

[16]A state judge has two potential forms of immunity.  First, under the common law, all judges of superior or general jurisdiction are absolutely immune for their judicial acts.  *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978).  Second, under the Eleventh Amendment, a state official has absolute immunity when sued in her official capacity.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Both forms of absolute immunity are subject to certain exceptions.  Because the issue of whether either form of immunity applies depends on the nature of the claim, and because Plaintiff makes no claim in her complaint, we will refrain from analyzing immunity.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court.