**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0330n.06
Filed: June 11, 2008

No. 07-2365

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| URIAN R. STURGIS, SR.,<br>JENNIFER STEPHENS, | ) | |
| | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | |
| | ) | |
| Y.S., et al., minor children, through<br>parents Urian R. Sturgis, Sr. and<br>Jennifer Stephens, | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| KAREN HAYES, BERNICE | ) | DISTRICT OF MICHIGAN |
| HARRIS & MICHAEL PATTY, | ) | |
| individually and in their official | ) | |
| capacities at Western Wayne Child | ) | **O P I N I O N** |
| Protective Services; SARAH | ) | |
| ZACHMANN & JENNIFER | ) | |
| STEVENS, individually and in their | ) | |
| official capacities at St. Francis | ) | |
| Catholic Social Services; | ) | |
| ST. FRANCIS CATHOLIC SOCIAL | ) | |
| SERVICES, | ) | |
| | ) | |
| **Defendants-Appellees.** | ) | |
| | ) | |

**Before:  MERRITT, MOORE, and ROGERS, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  In this case, two parents, suing on their own

behalf and on behalf of the children that the State of Michigan has removed from them, assert that

the district court erred when it dismissed their civil suit for lack of jurisdiction under the *Rooker-Feldman* doctrine. We conclude that the *Rooker-Feldman* doctrine did not bar the plaintiffs' claims. Therefore, we **REVERSE** and **REMAND** to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Jennifer Stephens ("Stephens") and Urian Sturgis ("Sturgis"), a married couple, seek damages and other relief on account of Michigan's allegedly improper termination of their parental rights over their four minor children, Z.S., S.S., R.S., and Y.S. Although Stephens is the biological mother of all four children, Sturgis is the biological father of only R.S. and Y.S.

In June 2004, Michigan's Child Protective Services ("CPS") visited Stephens's home after receiving a tip that S.S. was burned by scalding water after S.S. failed to meet Sturgis's expectations for potty training. According to CPS's brief, neither Z.S. nor S.S. were removed from the house at that point in time.[1] CPS's Br. at 6. On September 27, 2004, CPS received a second tip indicating that S.S. had suffered new injuries. Two days later, Jackie Buckley, the biological father of Z.S. and S.S., told CPS that he was worried about the safety of his children.

On September 30, 2004, CPS interviewed Z.S. Stephens asked to be present for the interview, but CPS told Stephens that the interview of Z.S. had to be private. On the basis of the evidence that CPS gathered, on October 5, 2004, a warrant issued for Sturgis's arrest, and officers arrested Sturgis on October 18, 2004. On October 26, 2004, CPS removed Z.S. and S.S. from Stephens's home. Although the children were removed from the home, CPS lacked sufficient

---

[1]R.S. and Y.S. were not yet born. R.S. was born in December 2004, and Y.S. was born in February 2006.

evidence of abuse to support pursuing a criminal charge; the lack of evidence was allegedly due to Stephens's refusal to cooperate with CPS.

Despite CPS's inability to bring a criminal complaint, the Michigan Department of Human Services pursued the termination of Stephens's and Sturgis's parental rights. On March 29, 2007, the Michigan Court of Appeals upheld the termination of Stephens's and Sturgis's parental rights to Z.S., S.S., and R.S. *In re Stephens*, 2007 WL 948879 (Mich. Ct. App. Mar. 29, 2007). In the Michigan Court of Appeals, Stephens and Sturgis alleged that the trial court failed to take into account the children's status as Native Americans, erroneously admitted Z.S.'s hearsay statement regarding abuse, and generally lacked sufficient evidence to terminate parental rights. The Michigan Court of Appeals concluded that these claims all lacked merit and affirmed the termination of Stephens's and Sturgis's parental rights. On June 29, 2007, the Michigan Supreme Court declined to hear Stephens and Sturgis's appeal. *In re Stephens*, 733 N.W.2d 397 (Mich. 2007). The United States Supreme Court denied certiorari review. *Sturgis v. Michigan Dep't of Human Servs.*, 128 S. Ct. 617 (2007).

While Stephens and Sturgis defended their parental rights in the state proceedings, they also brought a pro se, in forma pauperis federal civil case in the U.S. District Court for the Eastern District of Michigan. On July 17, 2006, they filed a suit in their own names and on behalf of Y.S. against Sarah Zachmann and Jennifer Stevens of St. Francis Catholic Social Services, and Michael Patty, Karen Hayes, and Bernice Harris of CPS, as well as Richard McKnight and Laura Sheldon.[2]

---

[2]The complaint does not make clear Richard McKnight's or Laura Sheldon's roles in this case. Stephens and Sturgis's second complaint, although it named neither McKnight nor Sheldon as defendants in that case, indicates that McKnight was a "court[] referee," J.A. at 11 (Compl. ¶ 33), and Sheldon was a case worker.

3

The complaint alleged violations of sixteen statutory provisions and demanded the immediate return of their children, criminal indictments for all of the defendants, and millions of dollars in damages. On July 28, 2006, the district judge dismissed the complaint as frivolous under 28 U.S.C. § 1915(e)(2). The district court noted that the "[p]laintiffs have asserted several claims against defendants including: civil conspiracy, criminal conspiracy, hindering prosecution, fraud, misuse of federal funds, intimidation, harassment, coercion, perjury, obstruction of justice, malicious prosecution, and bribery. . . . Plaintiffs also say their First, Fourth, Seventh, and Fourteenth Amendment rights have been violated. . . . Although it appears that plaintiffs have attempted to invoke the Court's federal question jurisdiction, the complaint does not set forth allegations reasonably suggesting plaintiffs might have a federal claim." Joint Appendix ("J.A.") at 73-74 (Order in Case No. 06-13243). Stephens and Sturgis did not appeal the dismissal.

Approximately one month later, on August 31, 2006, Stephens and Sturgis filed a second pro se, in forma pauperis federal complaint (Case No. 06-13890). The case was initially assigned to a different judge, but the court noted that the "case appears to be a companion case to 06-13243[, the initial federal complaint]," and transferred the case to the original district judge. J.A. at 63 (Order Regarding Reassignment of Companion Case). This second complaint involved slightly different parties than the first federal case, with the addition of Z.S., R.S., and S.S. as plaintiffs, and the addition of defendant St. Francis Catholic Social Services, while deleting Richard McKnight and Laura Sheldon. In addition, the second complaint raised similar claims, asserting causes of action under 42 U.S.C. § 1983 for violations of the Fourth Amendment, denial of the Fourteenth Amendment's due process protections, and infringements upon Stephens's and Sturgis's rights to familial integrity. The second complaint also alleged negligence, fraud, perjury, and discrimination

4

claims. Although the second complaint did not explicitly seek the return of the children, plaintiffs asked the district court for unspecified compensatory and punitive damages, injunctive relief, and a declaration that the defendants' actions were unconstitutional.

The defendants moved for dismissal and summary judgment. The St. Francis defendants claimed that the second complaint was virtually identical to the earlier, frivolous suit and that the doctrines of res judicata and collateral estoppel barred the suit. The CPS defendants raised those same defenses and also asserted that the *Rooker-Feldman* doctrine and *Younger* abstention principles required dismissal, the plaintiffs lacked standing to sue on behalf of their children, the plaintiffs failed to state a claim, and the Eleventh Amendment barred claims against the state defendants in their official capacities.

On August 16, 2007, the district judge dismissed Stephens and Sturgis's second complaint. The judge observed that the defendants "present several grounds for dismissal, all of which are well-taken." J.A. at 25 (Order Dismissing Case No. 06-13890 at 5). The judge held that "plaintiff[s'] claim is barred by the *Rooker-Feldman* doctrine. . . . A fair reading of the complaint reveals that plaintiffs' federal case is an impermissible attack of [] state court judgments relating to the same issues raised in the complaint. Plaintffs' complaint is an attempt to declare those state court judgments void by declaring the underlying premise unconstitutional." J.A. at 26 (Order Dismissing Case No. 06-13890 at 6). On October 11, 2007, the district court denied plaintiffs' motion for reconsideration. Stephens and Sturgis filed a timely pro se appeal, and it is the dismissal of this second case that is now before us.[3]

---

[3]On March 26, 2007, Stephens and Sturgis filed a third federal complaint (Case No. 06-11301). That case is not at issue in this appeal.

## II. ANALYSIS

"This Court reviews *de novo* the district court ruling that the *Rooker-Feldman* doctrine precluded subject matter jurisdiction." *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006), *cert. denied*, ___ U.S. ___, 128 S. Ct. 41 (2007). We conclude that the district court improperly applied the *Rooker-Feldman* doctrine to bar Stephens and Sturgis's claims.

Before addressing the merits of this case, it is worth providing a few words on standing. The defendants in this case assert that Stephens and Sturgis lacked standing to bring this suit because the state of Michigan has terminated their parental rights. Although parents cannot bring a suit on behalf of children for whom they have no legal responsibility, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17-18 (2004), parents may file complaints to enforce their own rights, *Winkleman v. Parma City Sch. Dist.*, ___ U.S. ___, 127 S. Ct. 1994, 2006 (2007) (IDEA claims). While Stephens and Sturgis did sue on behalf of their children, they also brought all of their claims on their own behalf. Thus, Stephens and Sturgis had standing to bring this suit in their own names, and the issue of their standing to bring claims on behalf of the children need not be resolved.

The *Rooker-Feldman* doctrine emerged out of two cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). In effect, the plaintiffs in *Rooker* and *Feldman* sought to "appeal" their state cases to a federal district court.

After various circuits adopted differing interpretations of the *Rooker-Feldman* doctrine, the Supreme Court recently took the opportunity to clarify the doctrine's limited scope:

6

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284. Thus, the *Rooker-Feldman* doctrine does not preclude all federal cases that are somehow related to a prior state-court decision. "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (alteration and omission in original) (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

This distinction between cases that are covered by the *Rooker-Feldman* doctrine and those that are not, although clarified in *Exxon Mobil*, actually dates back to *Feldman*. In *Feldman*, at the same time that the Supreme Court stated that the district court lacked jurisdiction for some of the claims, the Court also noted that the district court *possessed jurisdiction* over the allegations that "involve[d] a general attack on the constitutionality of" bar admittance rules. *Feldman*, 460 U.S. at 487. Thus, what the *Rooker-Feldman* doctrine primarily bars are claims that seek "relief from injury 'caused by' the state court judgment." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469.1 at 11 (2d ed. Supp. 2008). In contrast, the *Rooker-Feldman* doctrine provides no escape from claims that seek relief from other injuries, such as those caused by third parties.

We have followed the Supreme Court's guidance, and we apply the *Rooker-Feldman* doctrine "only when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*,

7

448 F.3d 853, 858 (6th Cir. 2006). In other words, the *Rooker-Feldman* doctrine applies "when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law." *McCormick*, 451 F.3d at 395. To further explain the difference between normal preclusion and *Rooker-Feldman* principles, we have approvingly quoted the Tenth Circuit's explanation:

> "Appellate review—the type of judicial action barred by *Rooker-Feldman*—consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment. In this latter situation the conflict between the two judgments is to be resolved under preclusion doctrine, not *Rooker-Feldman*."

*Coles*, 448 F.3d at 858-59 (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)).

In the case at hand, Stephens and Sturgis do not claim injury from the state-court decision; instead, they assert independent claims against third parties. Stephens and Sturgis allege that the employees at CPS and St. Francis violated their constitutional rights and committed other acts of negligence, fraud, discrimination, and perjury. The plaintiffs' claims in the instant case, while they may lead a federal court to reach a conclusion contrary to the Michigan courts, do not seek federal appellate review of the state-court decision.

The case at hand is quite similar to *McCormick*, in which we held that the *Rooker-Feldman* doctrine did not apply to several claims in which the plaintiff was not attacking the state-court judgment itself. In the claims for which we held that the *Rooker-Feldman* doctrine did not apply, the plaintiff in *McCormick* had asserted that the "state court judgments were procured by certain

8

Defendants through fraud, misrepresentation, or other improper means, and that a state statute is vague and overbroad." *McCormick*, 451 F.3d at 392. After analyzing these claims, similar to the ones in the instant case, we noted that "[n]one of these claims assert an injury caused by the state court judgments; Plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law." *Id.* Had the plaintiff in *McCormick* (or the plaintiffs in the instant case) claimed that the state-court judgments caused the injuries, the result would have been different:

> "Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments."

*Id.* at 394 (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005)).

A claim asserting injuries caused by a state-court decision would trigger the application of the *Rooker-Feldman* doctrine. However, because the plaintiff in *McCormick* alleged wrongs by a third party, not by the state court, the plaintiff asserted an independent claim and the *Rooker-Feldman* doctrine did not apply. *Id.* at 393 ("If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim."). In the same way, Stephens and Sturgis's complaints against the employees of CPS and St. Francis cannot be characterized as an attack on the state-court judgment itself; rather than alleging injury from the judgment, they allege injury from the unconstitutional actions of these third parties involved in the removal of the children from Stephens's home.

9

Because the plaintiffs do "not complain of an injury caused by a state court judgment, we find that [they are] asserting independent claims, which are not barred by *Rooker-Feldman*." *Pittman v. Cuyahoga County Dep't of Children and Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007); *see also Southerland v. Giuliani*, 4 F. App'x 33 (2d Cir. 2001) (holding that the *Rooker-Feldman* doctrine does not bar a plaintiff's claims of constitutional violations related to the removal of children from the plaintiff's home).

Although the *Rooker-Feldman* doctrine does not apply, "the Supreme Court has instructed that preclusion law is the appropriate solution for these independent claims." *McCormick*, 451 F.3d at 392. While the district court called the defendants' various arguments for dismissal "well-taken," J.A. at 25 (Order Dismissing Case No. 06-13890 at 5), it addressed only the application of the *Rooker-Feldman* doctrine. For that reason, we leave to the district court on remand the determination of the applicability of the doctrines of preclusion and any other remaining matters. *See Feldman*, 460 U.S. at 488.

### III. CONCLUSION

We hold that the district court erred in its application of the *Rooker-Feldman* doctrine to independent claims that did not assert injuries caused by the state-court judgment. Accordingly, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

10