RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

GERALD DEAN MORGAN,

        *Plaintiff-Appellant*,

    *v.*

BOARD OF PROFESSIONAL RESPONSIBILITY OF THE
SUPREME COURT OF TENNESSEE; SANDRA GARRETT, in
her individual capacity,

        *Defendants-Appellees*.

No. 22-5200

───────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:21-cv-00274—Waverly D. Crenshaw, Jr., District Judge.

Argued: October 19, 2022

Decided and Filed: March 20, 2023

Before: BATCHELDER, BUSH, and DAVIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** W. Gary Blackburn, THE BLACKBURN FIRM, Nashville, Tennessee, for
Appellant. David M. Rudolph, OFFICE OF THE TENNESSEE ATTORNEY GENERAL,
Memphis, Tennessee, for Appellees. **ON BRIEF:** W. Gary Blackburn, THE BLACKBURN
FIRM, Nashville, Tennessee, for Appellant. David M. Rudolph, OFFICE OF THE
TENNESSEE ATTORNEY GENERAL, Memphis, Tennessee, for Appellees.

───────────────

## OPINION

───────────────

JOHN K. BUSH, Circuit Judge. This case involves a lawyer, Gerald Morgan, whose
alleged anti-Muslim tweets led to termination of his employment as Disciplinary Counsel for the

Board of Professional Responsibility of the Supreme Court of Tennessee (the Board).   The tweets occurred before Morgan took the job, but they came back to haunt him in that position.  In a state-court appeal of a disciplinary order of the Board, a litigant cited the tweets as grounds to disqualify Morgan from appearing as the Board's counsel in the appeal.  Following Morgan's withdrawal from that appeal, an internal investigation ended with the Board firing him.

Morgan then sued the Board and Sandra Garrett, the Board's Chief Disciplinary Counsel, for injunctive relief based on alleged violation of his First Amendment right to free speech and for damages under 42 U.S.C. § 1983 based on alleged wrongful termination.  The district court dismissed without prejudice Morgan's request for injunctive relief against the Board as barred by Eleventh Amendment sovereign immunity and because part of that request was moot.  As for the request for damages, the district court also dismissed based on the Board's sovereign immunity, as well as a determination that Garrett was entitled to absolute quasi-judicial immunity.  For reasons set forth below, we AFFIRM the district court's dismissal of Morgan's claims against the Board.  But we REVERSE the district court's dismissal of Morgan's request for monetary relief against Garrett based on absolute quasi-judicial immunity and REMAND for further proceedings consistent with this opinion.

I.

On February 1, 2019, Gerald Morgan began employment as Disciplinary Counsel with the Board.  His troubles began during the appeal of a disciplinary proceeding involving Brian Manookian, who had been handed a two-year suspension of his law license by a hearing panel on May 20, 2020.  Following an unsuccessful motion for a stay of his state-court appeal of the license suspension, Manookian moved on November 24, 2020, to disqualify and replace Morgan as the Board's counsel in the appeal, claiming that Morgan was "an anti-Muslim bigot." Manookian's court filing attached tweets posted by Morgan from 2015 and 2016 that allegedly demonstrated Morgan's bias toward Muslims.  Though Manookian himself is not Muslim, he claimed that his wife was of the Islamic faith and that his children were being raised in a Muslim household.  Based on these alleged facts, Manookian argued that Morgan's tweets demonstrated substantial bias against Muslims and that Morgan should be disqualified from handling the

appeal and replaced with special counsel. Morgan responded by claiming that the tweets were political in nature and related to the 2015–2016 presidential campaign between Donald Trump and Hillary Clinton. Morgan also disavowed having any knowledge of the religious faith and practices of Manookian's family, having never met or communicated with him or his family.

Nonetheless, in response to Manookian's motion to disqualify, the Board moved for Morgan to withdraw as Board counsel in the appeal, which the court allowed. But that was not the end of it. About a week later, on December 11, 2020, Garrett, on behalf of the Board, called Morgan to inform him that his employment would be terminated. Garrett cited several reasons for the firing: "(1) [Morgan's] duty to protect the public by investigating and prosecuting cases 'without discrimination or bias'; (2) Manookian's motion to disqualify [Morgan] for bias; (3) a separate, unnamed attorney's misconduct complaint against [Morgan]; and (4) [Morgan's] Twitter posts." Appellee's Br. at 4–5. After Morgan lost his job, the Board then responded to Manookian's motion, stating that his motion to disqualify Morgan was moot because Morgan was no longer employed by the Board.

Several months later, on March 1, 2021, Garrett sent Morgan a letter notifying him that the Board had opened a disciplinary file against him. Morgan claims that this disciplinary file stemmed from Manookian's motion to disqualify. On March 29, Morgan was informed that the disciplinary matter against him had been dismissed.

On April 5, 2021, Morgan filed a complaint, stating in the case caption that it was against the Board and Garrett "in her individual capacity." Compl. at PageID.1. There is no mention in the case caption or body of the complaint that any claim is brought against Garrett in her official capacity. Morgan alleges that the Board and Garrett wrongfully terminated his employment and violated his constitutional rights when he was fired based on tweets featured in Manookian's motion to disqualify. Morgan sued for injunctive relief and for money damages. As for the injunctive relief, Morgan sought for the district court to enjoin the Board and Garrett from "taking any adverse action as a result of his protected speech, including any action against Plaintiff through the means of any disciplinary file opened against him premised on his speech." Compl. at PageID.9. He also requested a "mandatory permanent injunction" against the Board to

"expunge all reference to any disciplinary file premised on Mr. Morgan's speech from its internal computer tracking systems, and removing any indication that Mr. Morgan was terminated for cause." *Id.* at PageID.9–10.

The Board and Garrett moved to dismiss Morgan's complaint, citing several reasons. Both defendants argued that claims against them should be dismissed for lack of subject-matter jurisdiction based on the Eleventh Amendment. Garrett also sought dismissal of the claims against her on the grounds of absolute quasi-judicial immunity, qualified immunity, and failure of the complaint to state a claim for injunctive relief.

The district court granted dismissal. It dismissed Morgan's claims against the Board without prejudice for lack of subject-matter jurisdiction based on Eleventh Amendment sovereign immunity. It also dismissed without prejudice Morgan's request for injunctive relief as moot to the extent that it sought to restrain defendants "from opening a disciplinary file against him" because "Morgan admits that the Board has already dismissed any disciplinary proceeding against him." And the district court dismissed with prejudice the claim for damages against Garrett because of her absolute quasi-judicial immunity. Morgan timely appealed.

II.

This court reviews grants of motions to dismiss de novo. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009). On review, this court should view facts in the light most favorable to the plaintiff, in this case Morgan. *See Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005).

A. Injunctive Relief

Before considering a suit against a state, a federal court must determine whether the Eleventh Amendment bars jurisdiction. That constitutional provision reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This amendment grants sovereign immunity to the states in most cases, which prevents federal courts from having jurisdiction in

lawsuits brought by private plaintiffs where the state is a defendant. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)). Such immunity also extends to departments and agencies that are arms of the state, as well as state officers acting in their official capacity. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (the Eleventh Amendment bars suits against departments that are arms of the states); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (construing suits against a state official in his or her official capacity as a suit against the official's office). This immunity bars suits "for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993).

That said, courts maintain jurisdiction in some circumstances despite sovereign immunity. States may waive their immunity or Congress may remove it by statute. *Id.* Also, a court has subject-matter jurisdiction to hear a constitutional claim against an official acting under color of state law if the claim fits within the exception of *Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte Young*, "suits against state officials seeking equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment." *Mich. Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 867 (6th Cir. 2000) (citing *Ex parte Young*, 209 U.S. at 159–60). This doctrine applies only when the plaintiff sues for "prospective [injunctive] relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). If the complaint fails to "make clear what those ongoing violations are," the exception does not apply. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017). Nor does the exception exist for injunctive relief "based entirely upon past acts and not continuing conduct that, if stopped would provide a remedy to" the plaintiff. *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003).

Morgan appeals the dismissal of his request for injunctive relief, arguing that the district court has subject-matter jurisdiction to grant the requested remedy based on *Ex parte Young*. The district court held that *Ex parte Young* did not apply and therefore held it lacked subject-matter jurisdiction to hear Morgan's request for injunctive relief. We agree with the district court's conclusion that the court lacks subject-matter jurisdiction to grant the injunctive relief as alleged in the complaint, but we affirm the dismissal without prejudice for a different reason than that relied upon below. *See Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033,

1036 (6th Cir. 1999) (stating that this court "can affirm the district court on alternate grounds supported by the record") (citing *Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970)).

The district court held that *Ex parte Young* does not apply because Morgan failed to "allege any ongoing violation of federal law." According to the district court, "Morgan's allegations are based entirely on his termination." The complaint, however, can be plausibly read to extend to post-termination conduct of the Board that he pleads as an ongoing constitutional violation. Morgan alleges that the Board opened a disciplinary file related to him. Compl., at PageID.7. True, the disciplinary proceeding was dismissed, *id.*, but Morgan's prayer for relief also indicates that the Board continues to maintain records related to the disciplinary proceeding, *id.* at PageID.9, and Morgan seeks, among other things, to obtain a permanent injunction (1) "restraining and enjoining the Board and Ms. Garrett from taking any adverse action" against him "through the means of any disciplinary file opened against him premised on his speech," and (2) "requiring the Board to expunge all reference to any disciplinary file premised on Mr. Morgan's speech from its internal computer tracking systems, and removing any indication that Mr. Morgan was terminated for cause." *Id.* In other words, Morgan posits that he is and will be harmed by the Board's continued maintenance of disciplinary records against him and other internal records that pertain to his alleged unconstitutional firing.

We have held in analogous contexts that expungement of negative government records pertaining to an aggrieved individual may qualify as prospective relief to remedy a constitutional violation. For example, in *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016), we recognized that where a university student sought removal of a negative notation from his school record that resulted from an allegedly unconstitutional disciplinary process, the relief sought was available under *Ex parte Young*. *Doe*, in turn, relied on *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995), which held that the Eleventh Amendment did not bar an injunction requesting the removal of negative entries from a plaintiff's personnel record that resulted from an alleged due-process violation.

Other circuits have similarly found that expungement of negative records was prospective and not barred by sovereign immunity in analogous settings. For instance, in *Doe v. Purdue*

*University*, 928 F.3d 652, 666 (7th Cir. 2019), the court relied on *Doe v. Cummins* to conclude that an injunction requiring officials to expunge a finding of guilt from a student's disciplinary record was not precluded by the Eleventh Amendment. The court reasoned that a "marred record is a continuing harm" for which the plaintiff could seek redress. *Id.*; *see also Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (pursuing expungement of university records "serve[s] the purpose of preventing present and future harm"); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (an "F" grade and a plagiarism conviction "constitute[d] a continuing injury to the plaintiff" and an action to remove them was "prospective in nature").

Given this authority, the district court was in error to hold that it lacked subject-matter jurisdiction on the grounds that Morgan had not pleaded facts establishing a form of requested relief that is available under *Ex parte Young*. And, contrary to the district court's additional holding, none of the requested injunctive relief is moot because, even though the disciplinary proceeding was dismissed, Morgan sought injunctive relief for any future action in which a "disciplinary file [is] opened against him premised on his speech." Compl., at PageID.9.

Even so, we affirm the district court's dismissal without prejudice for a different reason. As an initial matter, the Board cannot be sued for injunctive relief here because it is an arm of the state and the state has not waived the Board's sovereign immunity, nor has Congress removed it. *Thiokol Corp.*, 987 F.2d at 381; Tenn. Code Ann. § 20-13-102(a). Therefore, the only issue is whether the *Ex parte Young* exception applies to Morgan's suit against Garrett.

One prerequisite for the *Ex parte Young* exception to apply is that the claimant must explicitly allege that a state official acted in her official capacity. *See Long v. Tennessee*, 744 F. App'x 945, 946 (6th Cir. 2018) (noting that claimant's "failure to allege an official-capacity claim against a state official prevents him from availing himself of the *Ex parte Young* exception"); *City of Austin v. Paxton*, 943 F.3d 993, 1003 (5th Cir. 2019) ("[I]n order '[t]o fall within the *Ex parte Young* exception to sovereign immunity . . . a plaintiff must name individual state officials as defendants in their official capacities.'" (quoting *Raj v La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013))). *Ex parte Young* is a limited exception to the state's sovereign immunity. *See Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). The Eleventh Amendment is

an important protection for the states. A state's immunity, therefore, cannot be abrogated by the plaintiff's simply leaving the capacity of the state actor unsaid in the complaint, to be guessed by the court and defendant.[1]

But Morgan's complaint not only omitted mention of any claim against Garrett in her official capacity—he affirmatively indicated that the *sole* basis on which she is being sued is in her individual capacity. As noted, the case caption of his complaint only states with respect to Garrett's capacity that she is sued "in her individual capacity." Compl., at PageID.1. Furthermore, the body of the complaint states, with respect to the claims against Garrett, only that she "is sued for money damages in her individual capacity," and that judgment is sought against "Garrett in her individual capacity for compensatory and punitive damages." *Id.* at PageID.8–9. In the absence of any explicit statement in the caption or body of the complaint that Garrett acted in her official capacity, the court lacks subject-matter jurisdiction to hear any claim for injunctive relief under *Ex parte Young*. Therefore, we affirm the dismissal without prejudice of the request for such relief.

B. Wrongful Termination

Morgan alleges under 42 U.S.C. § 1983 that he was wrongfully terminated in violation of his First Amendment right to free speech and, for relief, seeks money damages against the Board and Garrett. The Board argues that it was entitled to sovereign immunity for § 1983 suits involving money damages; Garrett argues, among other things, that she is entitled to absolute quasi-judicial immunity. The district court agreed on those grounds for dismissal without reaching Garrett's other arguments. We affirm the district court's ruling concerning the Board

---

[1]In *Moore v. City of Harriman*, we held that, to state a § 1983 claim against a state government official, the claimant need not explicitly plead that the official acted in an "individual capacity" if the "course of proceedings" gave notice to the official that he was being sued in that capacity. 272 F.3d 769, 772–73 (6th Cir. 2001) (en banc). But, as we recognized in *Moore*, the pleading rule announced in that case did not address jurisdictional requirements under the Eleventh Amendment because the police officers sued in *Moore* were "employees of a municipality, and the Eleventh Amendment does not apply to municipalities." *Id.* at 773 n.2. Here, by contrast, sovereign immunity under the Eleventh Amendment is implicated by injunctive relief sought against a state entity based on *Ex parte Young*. In those circumstances, the claimant must explicitly allege that the claim is brought against a state official in her official capacity.

but reverse the ruling concerning Morgan's claim against Garrett and remand for further proceedings that may include consideration of Garrett's other arguments.

As stated earlier, Eleventh Amendment sovereign immunity generally shields states from individuals suing them in federal court unless states waive their immunity or Congress removes it by statute. *Thiokol Corp.*, 987 F.2d at 381. As for suits under § 1983, Tennessee has not consented to such lawsuits and Congress has not removed states' sovereign immunity under the statute. *See* Tenn. Code Ann. §20-13-102(a); *Berndt v. Tenn.*, 796 F.2d 879, 881 (6th Cir. 1986) (Tennessee has not waived its sovereign immunity for § 1983 suits); *Will*, 491 U.S. at 67 (Congress has not removed state sovereign immunity for § 1983 claims). The district court therefore properly dismissed Morgan's action against the Board for monetary relief under § 1983.

Morgan also sought damages against Garrett under 42 U.S.C. § 1983, alleging that she wrongfully terminated him in violation of his First Amendment right to free speech. The district court dismissed this claim on the ground that Garrett was entitled to absolute quasi-judicial immunity.

Judicial immunity is a long-recognized common-law doctrine shielding judges from collateral attacks challenging a judge's actions taken in her official judicial capacity. *See Forrester v. White*, 484 U.S. 219, 225 (1988) (noting that the doctrine originated in "medieval times."). This immunity is absolute: all of a judge's actions taken in an official judicial capacity are immune from suit. And not just judges are protected by this immunity. Absolute quasi-judicial immunity extends the doctrine to "those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)).

When determining whether the tasks are integral or intertwined with the judicial process, the Supreme Court has endorsed the "functional approach." *Forrester*, 484 U.S. at 224. This approach requires a court to look to "the nature of the function performed, not the identity of the actor who performed it." *Id.* at 229; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74

(1993) (a prosecutor could not invoke quasi-judicial immunity where the prosecutor was seeking evidence to support an arrest and therefore was acting more like a detective or officer than aiding a judge in the administration of a case).

Though Morgan and Garrett disagree about what is and is not a judicial act, both recognize *Guercio v. Brody*, 814 F.2d 1115 (6th Cir. 1987), *judgment vacated in part on rehearing by Guercio v.* as an important case for this inquiry. In *Guercio*, a confidential secretary to a bankruptcy judge sued for wrongful termination after she was discharged allegedly in violation of her constitutional right to free speech. *See id.* at 1115. The court held that judicial immunity does not extend to administrative acts, such as certain personnel decisions. *Id.* at 1116–17. In determining whether an act was administrative, *Guercio* applied a two-pronged test: first, the court must determine the "nature of the act itself, *i.e.*, whether it is a function normally performed by a judge"; second, the court must determine the "expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 1116 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The court held that the bankruptcy judge could not invoke judicial immunity for the firing, noting that terminating "a confidential and personal secretary is hardly the 'type of act normally performed *only* by judges.'" *Id.* at 1119 (quoting *Stump*, 435 U.S. at 362). The court determined that the "crucial mistake" of the district court in that case was that it "conflates official acts of judges into judicial acts and seeks to extend judicial immunity to this broader class of official acts." *Id.* at 1117.**[2]** In support of its analysis, the court cited Judge Posner's dissent in *Forrester v. White*, 792 F.2d 647, 663 (7th Cir. 1986) (Posner, J., dissenting), whose reasoning the Supreme Court later adopted in *Forrester* when it held that a judge's firing of a probation officer was not shielded by judicial immunity because such an act was more executive than judicial in nature, *Forrester*, 484 U.S. at 229–30. *See Guercio* 814 F.2d at 1117.

---

**[2]**The *Guercio* court also quoted with approval this passage from the Seventh Circuit: "Hiring and firing of employees is typically an administrative task. It involves decisions of a personal rather than impartial nature, which is integral to judicial decisionmaking . . . the judge did not utilize his education training, and experience in the law to decide whether or not to retain plaintiff. The administrative act of firing the plaintiff will not assist the judge in interpreting the law or exercising judicial discretion in the resolution of disputes." 814 F.2d at 1116–17 (quoting *McMillan v. Svetanoff*, 793 F.2d 149, 155 (7th Cir. 1986)).

Garrett attempts to distinguish *Guercio* by arguing that all of Garrett's actions were well within the scope of the duties delegated to her by the Tennessee Supreme Court. Those duties include employing and supervising staff needed to carry out the Disciplinary Counsel's functions. She also argues that her immunity from civil suit is expressly provided for in Tennessee Supreme Court Rule 9, § 17: "Members of the Board, district committee members, Disciplinary Counsel, staff, and practice monitors shall be immune from civil suit for any conduct in the course of their official duties." Garrett contends that, unlike in *Guercio*, where the judge fired his secretary simply so that the bankruptcy court could "function more effectively and harmoniously," *Guercio*, 814 F.2d at 1118, here Garrett acted squarely within duties the Tennessee Supreme Court delegated to her. Further, Garrett maintains that her reasons for terminating Morgan's employment—including Manookian's motion to disqualify Morgan for bias, other misconduct complaints against Morgan, and Morgan's duty to perform his job without discrimination or bias—were "intertwined" with the judicial process. *See Barrett v. Harrington*, 130 F.3d 246, 258–59 (6th Cir. 1997) (finding that acts protecting the integrity of the judicial process are adjudicatory in nature).

We remain unpersuaded. Though it is true that Garrett is entitled to absolute quasi-judicial immunity for her official *judicial* acts, it does not mean that she is entitled to immunity for *all* official acts. After all, quasi-judicial immunity only extends the same immunity a judge would enjoy to nonjudicial officials performing tasks intertwined with the judicial process. Because judges can commit official acts that are still considered nonjudicial in nature, so too can their agents commit acts that are nonjudicial.

Thus, it is of little consequence in this inquiry that there is a promulgated Tennessee Supreme Court rule extending immunity to the Disciplinary Counsel for *any* conduct in the course of their duties. Judicial immunity from § 1983 claims is governed by federal, not state, law. *See Barrett*, 130 F.3d at 254–57 (explaining how judicial immunity, *as recognized and developed by the Supreme Court*, protects state judges from certain § 1983 claims). And the relevant federal law is set forth in the Supreme Court's two-prong test articulated in *Stump*, which we applied in *Guercio*. *See Stump*, 435 U.S. at 362; *Guercio*, 814 F.2d at 1116–19. This Court should look to the nature of the challenged act itself and whether the party bringing the

§ 1983 claim dealt with the state actor in her *judicial* capacity. *Guercio* concluded that the acts of hiring and firing are essentially executive in nature, even if they fall within the proper scope of duties of a judge. 814 F.2d at 1119.

That brings us to Morgan's case. As in *Guercio*, the action of the state actor complained of here—Garrett's firing of Morgan—took place in the workplace, not the courtroom, setting. Garrett argues that her duties require her to ensure that her staff handles cases without bias. That fact, no doubt, will be relevant as to whether Morgan is entitled to prevail on his First Amendment claim under the balancing analysis of *Pickering*. *See Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968) (asking whether the plaintiff's "interests . . . as a citizen, in commenting upon matters of public concern," outweighs "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees"). But those considerations do not change the central point that Garrett's decision to terminate Morgan's employment, like the judge's decision to fire his secretary in *Guercio*, was not a decision that is unique to a judge's duties in the courtroom such that absolute judicial immunity applies.

Morgan's complaint does not challenge his removal from Manookian's appeal or any other case. It pertains only to his termination of employment and alleged subsequent harm from that decision. Granted, the Board's decision regarding which counsel should appear on its behalf in a particular case may be analogous to a judge's decisions for which absolute immunity applies, such as whether to recuse, compel counsel to appear, or hold counsel in contempt of court. *See, e.g., Barrett*, 130 F.3d at 258–60 (noting that decisions to recuse and holding counsel in contempt of court are integral to judicial decision making and preserving the integrity of the judicial system). But Morgan's complaint does not arise from Garrett's action as to Morgan's appearance or conduct in any particular case. It is based on her termination of his employment. Accepting Garrett's argument would result in the same error that resulted in reversal in *Guercio*—"conflat[ing] official acts of judges (or their agents) into judicial acts," thereby "extend[ing] judicial immunity to a broader class of official acts." *See Guercio*, 814 F.2d at 1117 (parenthetical added).

Indeed, as the *Guercio* court concluded, under the standard Garrett argues for, it is hard to see a principled limit for judicial immunity, *id.* at 1118, let alone (as in this case) quasi-judicial immunity. Rather, courts reaffirm time and again that hiring and firing is administrative or executive in nature, not judicial. *See generally Forrester*, 484 U.S. at 229–30; *Guercio*, 814 F.2d at 1116–19; *Barrett*, 130 F.3d at 255–56. Judicial immunity, though absolute and firm, is something to be applied carefully and should not be extended further than its justification warrants. *See Barrett*, 130 F.3d at 254 (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)); *Guercio*, 814 F.2d at 1120 ("The integrity and independence of judicial decisionmaking is in no way impaired if judges are called to account for their personal decisions.") Extending judicial immunity in this case would extend its reach to areas previously denied—namely administrative acts like hiring and firing employees. We therefore hold that the district court erred in holding that Garrett is entitled to absolute quasi-judicial immunity.

C. Qualified Immunity

The district court did not reach Garrett's qualified immunity defense. Because this issue is not properly before us, we decline to address it here. *See Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 576 (6th Cir. 2013) ("Absent 'exceptional circumstances,' we normally decline to rule on an issue not decided below.") (quoting *St. Marys Foundry, Inc. v. Emp'rs Ins. of Wausau*, 332 F.3d 989, 996 (6th Cir. 2003)).

III.

For the reasons stated above, we AFFIRM the district court's dismissal of Morgan's requests for injunctive relief, as well as the request for monetary relief against the Board, and we REVERSE the district court's dismissal of Morgan's request for monetary relief against Garrett based on absolute quasi-judicial immunity and REMAND for further proceedings consistent with this opinion.