NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0367n.06

No. 22-1774

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EMILY EVANS; MELANIE WELCH,

        Plaintiffs - Appellants,

v.

CITY OF ANN ARBOR, MICHIGAN; JAMES
WORTHINGTON, in his official and individual
capacities; CRAIG S. STRONG, in his official and
individual capacities; MEADOWLARK
BUILDERS, LLC; DOUGLAS SELBY; KIRK
BRANDON; DAVE ANDERSON; HARRY
RAMSDEN; TINA ROPERTI; MICHIGAN
QUALITY ELECTRIC; DEREK TUCK; DAVID
GILES; ROB MCCRUM; ARBOR INSULATION;
MEADOWLARK ENERGY; ROBERT
PATTERSON; MATTHEW E. KRICHBAUM, in
his official and individual capacities; PROPERTY
MANAGEMENT SPECIALISTS, INC.; HOWARD
& HOWARD ATTORNEYS, PLLC; BRANDON
WILSON; JUDGE TIMOTHY CONNORS, in his
official capacity only; CAROL KUHNKE, Chief
Judge of the Washtenaw County Circuit Court, in her
official capacity only,

        Defendants - Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Aug 10, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Plaintiffs Emily Evans and her mother Melanie Welch

suffered a default judgment in state court over a home-renovation contract dispute. They brought

federal claims against the contractor, the city, and the lawyers and judges involved in the state

court proceedings. Most prominently, plaintiffs asked the district court to vacate the state court

judgment under Federal Rule of Civil Procedure 60. The district court dismissed the claims. Seeing no error, we AFFIRM.

I.

Because this case reaches us on a motion to dismiss, we generally "take as true all the factual allegations" in the complaint and "make all reasonable inferences in [plaintiffs'] favor." *Doe v. Oberlin Coll.*, 963 F.3d 580, 581 (6th Cir. 2020). With that in mind, the relevant allegations of the complaint follow.

In 2015, Emily Evans sought an insurance policy on her newly purchased home. But an insurance company informed her, for the home to be insured, she needed to remove all active "knob and tube wiring" because the old wiring could be a fire hazard. Evans then contacted defendant Meadowlark Builders, LLC, which also brought an electrical company, defendant Michigan Quality Electric (MQE), on board. The plan was that MQE would remove the wires and Meadowlark would repair the walls. Meadowlark's account manager, defendant Dave Anderson, advised plaintiffs that it would be wise to install insulation while the walls were being repaired; Welch, Evans's mother, consented to this arrangement.

On November 25, 2015, Evans signed a one-page contract for all the electrical and insulation work for a fixed price of $50,893, with half paid as a deposit before work began. Meadowlark paid for the relevant permits out of the deposit, including a $350 insulation permit, and began work around December 2015. On January 5, 2016, the home passed a "rough" electrical inspection by the city inspector, and Meadowlark's subsidiary Arbor Insulation began the insulation process the next day.

Problems soon arose. Plaintiffs identified "serious issues" with the work. In particular, Welch identified a section of wall that she believed had not been insulated. On January 11, 2016,

a city inspector, defendant James Worthington, issued a pass indicating the wall had been insulated. But according to plaintiffs, defendant Craig Strong, the chief inspector for the city, came by and poked a hole in the wall to discover that it, in fact, had not been insulated. Strong allegedly remarked that he believed "Ann Arbor should not be issuing permits to conduct insulation work" because it could not verify what was behind the walls.

On January 22, 2016, defendant Rob McCrum, an MQE supervisor for the home's electrical work, walked Welch through the home and confirmed that each outlet and fixture had no more knob or tube wiring. But plaintiffs allege that they learned later from another contractor that there was no way these outlets and fixtures were checked because many were still sealed with old paint. Welch complained. MQE sent plaintiffs a letter on February 5, 2016, confirming the removal of live knob and tube wiring. But plaintiffs continued to complain because the letter stated the wiring had been removed only from "open areas." After another walkthrough on February 10, 2016, the new Meadowlark supervisor on the project agreed to remedy some of plaintiffs' concerns.

That promise went unfulfilled, for on February 18, 2016, Meadowlark and its subcontractors "walked off the job," leaving wires exposed throughout the home. According to plaintiffs, Meadowlark would not return to work until plaintiffs paid the balance on the contract—$27,918. Plaintiffs disputed the amount and believed the work was not satisfactory. Also, defendant Douglas Selby, owner of Meadowlark, allegedly refused to close the electrical permit, which prevented the hiring of another company to complete the work. Selby apparently told the city that he could not close the permit because of his ongoing contract with Evans, which remained unpaid. Evans sent Meadowlark a letter listing the deficiencies in the project and terminating the contract. She then changed the locks, and Ann Arbor closed the permits.

In March 2016, plaintiffs learned that McCrum, supervisor of the electrical work, was not a licensed electrician. Evans filed a complaint with the Michigan Department of Licensing and Regulatory Affairs (LARA), which determined that MQE violated the law and that fines applied. LARA eventually issued a formal complaint and determined that there had been two violations of Michigan's Occupational Code. Meadowlark and its owner Selby signed a document stipulating to the violations.

In April 2016, Meadowlark filed a complaint in state court against Evans alleging breach of contract. Meadowlark attached to the complaint the one-page contract and four additional pages that were allegedly not attached to the original contract. Plaintiffs counterclaimed for unjust enrichment, civil conspiracy, breach of implied covenants, and negligence. The state court dismissed these counterclaims.

In July 2017, Meadowlark amended its complaint in the state action to allege a further contract for work amounting to $2,471; plaintiffs called this a "fraud on the court." Plaintiffs also asserted that this sum was the same amount for which LARA fined defendants and that Meadowlark committed fraud when it stated that plaintiffs had signed a contract including additional pages that plaintiffs had not seen (which Selby admitted in a stipulation with LARA).

Trial was set for October 2, 2017. Defendant Brandon Wilson, attorney for Meadowlark, filed an unopposed motion in limine to block use of the LARA materials and stipulation, which the court granted.

On September 28, 2017, Evans's counsel moved to withdraw as counsel, and Evans moved to update her representation to pro se. In the motion to withdraw, the counsel stated Evans had terminated him due to "numerous disagreements." But to plaintiffs' surprise, Judge Connors (defendant in the case at bar) did not rule on these motions. Four days later, on October 2, 2017,

Evans and her counsel did not show up for the scheduled trial. The court proceeded with a jury trial. Defendant Wilson presented the same contract with five pages; plaintiffs allege this was knowing fraud especially given the LARA stipulation. Plaintiffs asserted this contract was void and unenforceable at that time. And they alleged that presenting a purportedly void document "committed a fraud on the court, and [] also suborned perjury by Anderson," Meadowlark's account manager, who organized the contract's signing. Also, Selby, according to plaintiffs, testified that the five-page document was the contract, told the court that Evans had "improperly locked them out," and used the inspection "passes" to persuade the jury that they met their contractual obligations.

Near the close of trial, Welch interrupted the proceedings and asked to testify, but Judge Connors denied this request since Welch was not a party. Meadowlark moved for a default judgment. Judge Connors granted the motion, leading to a judgment for $27,918. Plaintiffs alleged the judgment is "void and unenforceable" because it rests on fraud and perjury. The Michigan Court of Appeals denied relief, and the Michigan Supreme Court refused to hear the case.

On July 30, 2019, Meadowlark moved for the appointment of a receiver over Evans's property to generate funds to pay off the judgment. Judge Connors appointed defendant Matthew Krichbaum as receiver. He also allowed Krichbaum to contract with defendant PMSI, which arranged for another property belonging to Evans to be leased to generate income to pay the judgment. Plaintiffs believed that Krichbaum and PMSI violated Michigan law throughout the lease, failed to repair property damage from the tenants, and wrongfully "destroyed its file" about management of the property.

Plaintiffs sued in the Eastern District of Michigan under various theories, and defendants moved to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The court dismissed the claims as to all defendants but PMSI. Evans moved to amend the complaint (for a second time), but the court denied the motion, reasoning that the proposed amended complaint "features claims that have already been dismissed or—even as amended—would not survive a motion to dismiss." Plaintiffs conceded that if the court denied leave to amend, the claims against PMSI could not survive. The court therefore dismissed the remaining claim against PMSI. Plaintiffs timely appealed.

## II.

On appeal, plaintiffs make nine arguments: (1) The state court judgment should be vacated under Federal Rule of Civil Procedure 60(b); (2) the *Rooker-Feldman* doctrine does not apply; (3) the state judge violated plaintiffs' procedural due process rights; (4) the receivership should be nullified; (5) the permit fee amounted to a taking; (6) the takings claim was brought within the statute of limitations; (7-8) civil conspiracy; and (9) the district court erred in denying leave to amend.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). We review de novo a Rule 12(b)(6) dismissal. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citing *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "[W]e take as true all the factual allegations in [the] complaint, and make all reasonable inferences in [plaintiffs'] favor." *Oberlin Coll.*, 963 F.3d at 581 (quoting *Baum*, 903 F.3d at 581). We then determine whether the allegations "plausibly give rise to an entitlement to relief," i.e., whether they "allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "This Court reviews questions of subject matter jurisdiction de novo." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 401 (6th Cir. 2020) (quoting *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435 (6th Cir. 2006)).

### III.

To begin with, plaintiffs assert that the $350 insulation permit fee amounted to a taking by the City of Ann Arbor because the city did not provide a legitimate inspection service. Despite receiving an inspection pass, "[i]n point of fact, the installation of the insulation had not been done correctly, and with respect to some walls, not at all." Appellants' Br. at 50. The district court dismissed this claim as barred by Michigan's statute of limitations as applied to 42 U.S.C. § 1983. It determined (and plaintiffs appeared to concede) that plaintiffs were aware of the alleged taking on June 17, 2016, when inspector Strong poked a hole in the wall and discovered a lack of insulation, and therefore a claim had to be filed by June 17, 2019.

"In § 1983 cases, 'state law determines which statute of limitations applies,' while 'federal law determines when the statutory period begins to run.'" *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020) (quoting *Harrison v. Michigan*, 722 F.3d 768, 772–73 (6th Cir. 2013)). For purposes of § 1983, we borrow from the state statute of limitations applicable to personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *see also Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (partially abrogating *Wilson* based on a new federal statute of limitations, but only for claims "made possible by a post-1990 enactment"). Michigan imposes a three-year statute of limitations for personal injury suits. Mich. Comp. Laws § 600.5805(2). And

the cause of action accrues (at the latest) "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Garza*, 972 F.3d at 867 n.8 (quoting *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)).

Plaintiffs argue that we should give them latitude with the statute of limitations in the wake of the Supreme Court's decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019). Plaintiffs assert that they were pursuing administrative remedies in accordance with Supreme Court precedent that was overruled by *Knick*. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."), *overruled by Knick*, 139 S. Ct. at 2179. *Knick* abrogated the requirement to pursue state remedies before bringing a takings claim to federal court. *Knick*, 139 S. Ct. at 2177 ("[B]ecause the violation is complete at the time of the taking, pursuit of a remedy in federal court need not await any subsequent state action."). So although "[t]he Fifth Amendment right to full compensation arises at the time of the taking," *id.* at 2170, plaintiffs argue giving *Knick* retrospective application would cause "manifest injustice." Appellants' Br. at 53.

But as the district court properly noted, the Supreme Court has held:

When [the United States Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993); *see also Watkins v. Healy*, 986 F.3d 648, 664–65 (6th Cir. 2021) (stating that federal rule of absolute immunity applies with "full retroactive force" based on *Harper*). The constitutional rule announced in *Knick* certainly applies retroactively to the circumstances here, as we are hearing the takings claim on direct review from

the district court. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 421 F.3d 417, 420–21 (6th Cir. 2005) (describing "direct review" requirement).

Even so, plaintiffs' reliance on *Williamson* is misguided. They filed a claim with the city on September 18, 2020—more than a year after June 21, 2019, when *Knick* was decided. Therefore, they should have known that the requirement to pursue state remedies no longer applied. Yet plaintiffs filed their lawsuit on March 15, 2021, almost two years after *Knick*. Nor were plaintiffs diligent in pursuing their rights. As the city pointed out, plaintiffs did not pursue any state law remedies for four years after the accrual of the takings claim in 2016.

Being that plaintiffs' takings claim falls beyond the statute of limitations, this claim is time-barred.

## IV.

Plaintiffs also allege two civil conspiracies under § 1983: (1) among the city, its inspectors, and Meadowlark and its employees and affiliates to violate plaintiffs' Fifth and Fourteenth Amendment rights; and (2) among the trial court, Meadowlark, and its attorneys to violate plaintiffs' due process rights. The district court dismissed these claims as barred by the three-year statute of limitations under the same logic as the takings claim. We agree. Plaintiffs offer a single sentence in rebuttal, employing the same logic used to advance their takings claim. Appellants' Br. at 55. But they filed these § 1983 claims more than three years after the actions accrued and they are time-barred.

## V.

Plaintiffs also challenge the district court's dismissal of the request for a declaratory judgment against Judge Connors, the state court judge who presided over the jury trial. They assert that Judge Connors, by failing to provide additional time to find an attorney, violated Evans's "1st

Amendment right to petition the government for a redress of grievances, which incorporates the right of access to the courts." Appellants' Br. at 40–41. They also claim that, "[b]y proceeding to hold a jury trial without Evans being represented by counsel, Evans was deprived of the opportunity to be heard" as guaranteed by the Fourteenth Amendment. *Id.* at 41.

"Judicial immunity is a long-recognized common-law doctrine shielding judges from collateral attacks challenging a judge's actions taken in her official judicial capacity." *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 518 (6th Cir. 2023) (citing *Forrester v. White*, 484 U.S. 219, 225 (1988)). Absolute judicial immunity precludes suits seeking damages, *see Forrester v. White*, 484 U.S. 219, 225–26 (1988), but does not bar prospective relief against a judicial officer acting in an official judicial capacity, as plaintiffs seek here. *See Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). However, Article III's case-or-controversy requirement "ensure[s] that declaratory relief is available only when a live controversy continues to exist." *Ward v. City of Norwalk*, 640 F. App'x 462, 468 (6th Cir. 2016). Our circuit has repeatedly noted that "there is usually no [case] or controversy between judges acting as adjudicators and litigants displeased with litigation outcomes." *Oliver v. Scorsone*, No. 20-5381, 2020 WL 5959638, at *1 (6th Cir. Sept. 8, 2020) (quoting *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019)). A declaration that Judge Connors violated plaintiffs' constitutional rights during a trial that concluded nearly six years ago will do nothing to address any live case or controversy or prospective injury, but would rather relitigate an already decided case. *Cf. Kentucky v. Yellen*, 54 F.4th 325, 343 n.14 (6th Cir. 2022). The district court's dismissal of plaintiffs' claim against Judge Connors is therefore affirmed.

No. 22-1774, *Evans, et al. v. City of Ann Arbor, Mich., et al.*

VI.

Plaintiffs next assert that the state court judgment is void, or that we should vacate it under Rule 60(b) or Rule 60(d) of the Federal Rules of Civil Procedure.[1] As a result, according to plaintiffs, we should set aside the receivership as the judgment that led to the appointment of the receiver is void. Plaintiffs' main concern with the state court judgment is that it was allegedly procured by fraud, including perjury during the trial. They claim that the signed contract was definitively a single page, yet at trial Attorney Wilson knowingly presented as evidence a false version of the contract containing five pages.

It is basic doctrine that only the Supreme Court may review a state court judgment in most circumstances. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). *Rooker* and *Feldman* both held the district court lacked subject matter jurisdiction when "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.* at 291; *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–416 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). Of course, it is not always obvious when federal claims are actually appeals of state court judgments. Therefore, a state judgment alone does not erase federal court jurisdiction over a related issue. *See Exxon*, 544 U.S. at 292.

Instead, under the *Rooker-Feldman* doctrine, we determine whether plaintiffs have brought "a de facto appeal of a state court judgment" in federal court. *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 386 (6th Cir. 2021) (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139

---

[1] It is not clear what claim plaintiffs' request falls under, so we construe it as a motion, denied by the district court, to vacate the state court judgment. Plaintiffs mention Rule 60(d)(3) in their briefs, Appellants' Br. at 37, but this rule is not mentioned in their complaint. Regardless, the request to vacate the state court judgment is the same and the additional rule does not change our analysis.

11

(9th Cir. 2004)). In doing so, we examine the "source of the injury the plaintiff alleges in the federal complaint." *Vanderkodde*, 951 F.3d at 402 (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). "If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.* at 402 (first citing *McCormick*, 451 F.3d at 393; and then quoting *Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008)).

But as some of the appellees point out, Judge Connors excluded the documents plaintiffs rely on for evidence of fraud such that they are challenging Judge Connors' evidentiary determination on the motion in limine. As the Michigan Court of Appeals explained, "Evans did not file a written response to the motion in limine and, at the hearing on the motion, Evans' counsel specifically stated that he did not oppose the motion. 'A party cannot stipulate a matter and then argue on appeal that the resultant action was error.'" *Meadowlark*, 2019 WL 452157, at *5 n.2 (quoting *Holmes v. Holmes*, 760 N.W.2d 300, 308 (Mich. Ct. App. 2008)). And the requested relief gives away the game: plaintiffs ask us to vacate the state court judgment. It is clear the "source of the plaintiff's injury is the state-court judgment itself." *Vanderkodde*, 951 F.3d at 402. In fact, defendant attorneys point out in their brief that they—not Evans—were the ones who alerted the court to the consent order that was excluded from evidence, undermining plaintiffs' allegations of perjury. Br. of Attorneys at 18–19 n.8.

The *Rooker-Feldman* doctrine bars plaintiffs' request under Rule 60(b) to vacate the state court judgment. By the same token, we see no merit in the related claim that the receivership is also void.

VII.

Last, we consider whether the district court erred in denying plaintiffs the opportunity to amend their complaint. The denial of a motion for leave to amend is reviewed for abuse of discretion. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640 (6th Cir. 2018) (citing *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008)). An abuse of discretion exists where a district court "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* at 540 (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

Plaintiffs assert they "corrected the deficiencies which the District Court claimed existed," Appellants' Br. at 61, including in their brief only a request to add a Rule 60(d) vacatur request, in addition to the existing request under Rule 60(b). While a Rule 60(b)(3) motion to relieve a party from a judgment based on fraud must be filed within one year of judgment, Fed. R. Civ. P. 60(c)(1), this time bar does not apply to Rule 60(d), which imposes no time limit on a court to "set aside a judgment for fraud on the court," *id.* 60(d)(3). But as discussed, *Rooker-Feldman* bars this challenge to the state court judgment, and so amending the complaint would be futile.

VIII.

In closing, we express sympathy for plaintiffs, who allegedly suffered a bungled home improvement job and may not have known, in the absence of counsel, that they needed to attend trial. Procedural rules can be harsh. But it is not within our power to uproot multiple prior sound judgments. For the foregoing reasons, we AFFIRM the district court's dismissal of this case.